**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| WORLDWIDE AIRCRAFT SERVICES, INC. d/b/a JET ICU, | Civil Action No. 8:25-CV-01444-TPB-SPF |
| Plaintiff and Petitioner, | |
| vs. | District Judge Thomas P. Barber |
| ANTHEM INSURANCE COMPANIES, INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD OF VIRGINIA, | Magistrate Judge Sean P. Flynn |
| Defendant and Respondent. | |

**ANTHEM INSURANCE COMPANIES, INC.'S MOTION TO DISMISS
PETITION TO CONFIRM ARBITRATION AWARD AND
INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

## TABLE OF CONTENTS

**Page**

I. Introduction ............................................................................................................ 1

II. Background ............................................................................................................. 2

    A. Surprise Medical Bills and the NSA ....................................................... 2

        1. The NSA Bans Surprise Medical Bills and Limits Patients' Financial Responsibility ................................................................. 3

        2. The NSA Removes Patients from Surprise Billing Disputes by Creating a Non-Judicial Process for Health Plans and Providers to Resolve Them ......................................................... 3

            (a) Open Negotiations and the IDR Process .......................... 4

            (b) Agency Enforcement ........................................................... 5

            (c) Limited Judicial Review ..................................................... 6

    B. Jet ICU's Petition Seeks Judicial Review and Confirmation of an IDR Payment Determination ........................................................................ 6

    C. AICI, an Indiana Corporation, Does Not Have Connections to Florida, and Is Not a Proper Defendant for Claims Against "BCBS Federal Program Overseas Claims" ................................................... 7

III. Standard of Review .............................................................................................. 8

    A. Rule 12(b)(2) ................................................................................................ 8

    B. Rule 12(b)(6) ................................................................................................ 9

IV. Argument ............................................................................................................... 9

    A. The Court Lacks Personal Jurisdiction over AICI .............................. 9

        1. Jet ICU Cannot Establish That the Court Has General Jurisdiction over AICI .............................................................. 10

        2. Jet ICU Fails to Plead this Court has Specific Personal Jurisdiction over AICI .............................................................. 12

        3. The FAA and FAC Do Not Provide a Basis for Exercising Personal Jurisdiction Over AICI ............................................. 13

    B. Jet ICU Fails to Allege Facts Plausibly Stating a Claim ..................... 14

        1. The Fifth Circuit's Opinion in *Guardian Flight* is Persuasive and Should be Followed Here ................................................. 15

i

2.  Collateral Estoppel Bars Jet ICU from Relitigating the Same Issue Previously Litigated in the *Jet ICU v. GeoBlue* Case ....... 16

3.  Jet ICU Lacks a Right to Confirm IDR Awards ........................ 18

    (a)  Jet ICU Cannot Meet the Requirements for Confirmation under FAA Section 9 or the FAC ............ 18

    (b)  The NSA Does Not Grant Jet ICU a Private Right or Remedy to Enforce IDR Determinations in Court ........ 19

    (c)  The NSA Does Not Reference or Incorporate Section 9 of the FAA ..................................................................... 20

    (d)  Congress Chose to Omit 9 U.S.C. Section 9 from the NSA, Despite Including the Provision in Other Similar Statutory Contexts.............................................................. 21

    (e)  The NSA Prohibits Judicial Review Except for Actions to Vacate IDR Determinations per Section 10(a) of the FAA ............................................................................... 22

    (f)  Congress Granted the Agencies the Authority to Enforce a Payor's Failure to Pay an IDR Determination ..................................................................................... 23

4.  The IDR Determination at Issue is Not Enforceable Against AICI ............................................................................................ 24

V.  Conclusion .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval,*
    532 U.S. 275 (2001) ................................................................................. 16, 19, 23

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................ 9

*Azar v. Allina Health Servs.,*
    587 U.S. 566 (2019) .......................................................................................... 22

*Carmouche v. Tamborlee Mgmt., Inc.,*
    789 F.3d 1201 (11th Cir. 2015) ........................................................... 9, 10, 12

*Christo v. Padgett,*
    223 F.3d 1324 (11th Cir. 2000) .............................................................. 16, 17

*Corner Post, Inc. v. Board of Governors of the Fed. Rsrv. Sys.,*
    144 S. Ct. 2440 (2024) ...................................................................................... 20

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014) .......................................................................................... 10

*East Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.,*
    Case No. 25-cv-255 (PAE), 2025 WL 2371537 (S.D.N.Y. Aug. 14,
    2025) ........................................................................................................ 1, 15, 16

*Ellis, Rohas, Ross & Debs, Inc. v. UMR, Inc.,*
    No. 24-cv-20428-GAYLES, 2025 WL 742761 (S.D. Fla. Mar. 9,
    2025) ........................................................................................................ 19, 20, 22

*Garrett-Alfred v. Facebook, Inc.,*
    540 F. Supp. 3d 1129 (M.D. Fla. 2021) .......................................................... 9

*Gonzaga Univ. v. Doe,*
    536 U.S. 273 (2002) .......................................................................................... 20

*Guardian Flight, LLC v. Health Care Serv. Corp.,*
    140 F.4th 271 (5th Cir. 2025) ................................................................. *passim*

iii

*Irvin v. United States*,
    335 Fed.Appx. 821 (11th Cir. 2009) ..................................................................... 17, 18

*Jekyll Island-State Park Auth. v. PolyGroup Macau Ltd.*,
    140 F.4th 1304 (11th Cir. 2010) ................................................................................. 12

*Med-Trans Corp. v. Capital Health Plan, Inc.*,
    700 F. Supp. 3d 1076 (M.D. Fla. 2023) ......................................................... 14, 19, 20

*MSP Recovery Claims Series, LLC v. Nationwide Mut. Ins. Co.*,
    Civil Action No. 20-21573-Civ-Scola, 2021 WL 355133 (S.D. Fla.
    Feb. 2, 2021) .............................................................................................................. 10

*North Ga. Elec. Membership Corp. v. Calhoun*,
    989 F.2d 429 (11th Cir. 1993) .................................................................................... 17

*Prunty v. Arnold & Itkin LLP*,
    753 F. App'x 731 (11th Cir. 2018) ............................................................................... 8

*Romero v. Four Seasons Hotels Ltd.*,
    No. 2:24-cv-819-JLB-KCD, 2025 WL1124995 (M.D. Fla. Apr. 16,
    2025) ........................................................................................................................... 8

*Rotkiske v. Klemm*,
    589 U.S. 8 (2019) ................................................................................................. 21, 22

*Shaunnessey v. Monteris Med., Inc.*,
    554 F. Supp. 2d 1321 (M.D. Fla. 2008) ....................................................................... 8

*Touche Ross & Co. v. Redington*,
    442 U.S. 560 (1979) .................................................................................................... 21

*Tribeca Asset Mgmt. v. Ancla Int'l*,
    336 So. 3d 246 (Fla. 2022) ......................................................................................... 13

*Turtle Island Restoration Network v. Evans*,
    284 F.3d 1282 (Fed. Cir. 2002) .................................................................................. 21

*Walden v. Fiore*,
    571 U.S. 277 (2014) .............................................................................................. 12, 13

iv

*Worldwide Aircraft Servs., Inc. d/b/a Jet ICU v. Worldwide Ins. Servs., LLC d/b/a GeoBlue*, Case No. 8:25-cv-167-MSS-NHA, ECF No. 22 (M.D. Fla. Aug. 12, 2025) ...................................................................2, 15, 16, 18

*Worldwide Aircraft Servs., Inc. v. Anthem Ins. Co.*, 8:21-cv-456-CEH-AAS, 2023 WL 1069811 (M.D. Fla. Jan. 27, 2023) ...................11

*Worth Grp., Inc. v. Morales*, No. 22-cv-81372-CANNON-MCCABE, 2022 WL 18663051 (S.D. Fla. Dec. 2, 2022) ...................................................................................13

**Statutes**

5 U.S.C. § 580(c) ...................................................................................................21

26 U.S.C. §§ 9834, 4980D ...............................................................................5, 23

29 U.S.C. § 1132(a)(5) .......................................................................................5, 23

38 U.S.C. § 511(a) ..................................................................................................17

42 U.S.C. § 300gg.............................................................................................*passim*

9 U.S.C. § 9 .....................................................................................................*passim*

9 U.S.C. § 10(a)...................................................................................6, 15, 20, 22

Fla. Stat. § 48.193 ..........................................................................................9, 10, 12

Fla. Stat. § 682.013(1), (2).......................................................................................19

Fla. Stat. § 682.181 .................................................................................................14

**Other Authorities**

45 C.F.R. § 149.510(c)(1)(v) .....................................................................................4

United States Constitution, Fourteenth Amendment ......................................9, 10, 12

https://nsa-idr.cms.gov/providercomplaints/s/ ........................................................5

H.R. Rep. No. 116-615 .........................................................................................2, 3

Medicare and Medicaid Servs., *Supplemental Background on Federal Independent Dispute Resolution Public Use Files July 1, 2024 – December 31, 2024,* https://www.cms.gov/files/document/federal-idr-supplemental-background-2024-q3-2024-q4.pdf..................................................24

*Report to Congressional Committees: PRIVATE HEALTH INSURANCE Roll Out of Independent Dispute Resolution Process for Out-of-Network Claims Has Been Challenging*, 35 (December 2023) https://www.gao.gov/assets/d24106335.pdf........................................................5

Federal Rule of Civil Procedure 12(b)(2)...............................................................1, 8, 11

Federal Rule of Civil Procedure 12(b)(6)...................................................................1, 9

State Bus. Search, *Business Search*, https://file.dos.pa.gov/search/business ...........................................................14

vi

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Respondent Anthem Insurance Companies Inc. ("AICI"),[1] respectfully moves to dismiss with prejudice Petitioner Worldwide Aircraft Services, Inc., d/b/a JET ICU's ("Jet ICU") Petition to Confirm Arbitration Award filed at ECF No. 1 ("Petition") for (1) lack of personal jurisdiction and (2) failure to state a claim upon which relief can be granted.

## MEMORANDUM OF LAW

### I.    Introduction

Jet ICU improperly filed this action to confirm and enforce an alleged independent dispute resolution ("IDR") determination under the No Surprises Act ("NSA"). First, Jet ICU cannot establish that this Court has personal jurisdiction over AICI, an Indiana corporation with its principal place of business located in Indiana. Second, air ambulance providers like Jet ICU have no right to enforce IDR determinations in court. *Guardian Flight, LLC v. Health Care Serv. Corp.*, 140 F.4th 271, 275–76 (5th Cir. 2025) (Holding there is neither an express nor implied "right of action to enforce or confirm an IDR award" under the NSA); *East Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*, (hereinafter "*ECAPS*") Case No. 25-cv-255 (PAE), 2025 WL 2371537 at *17 (S.D.N.Y. Aug. 14, 2025)

---

1. The Complaint incorrectly names AICI as "Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross and Blue Shield of Virginia." Anthem Blue Cross and Blue Shield of Virginia is not a trade name or d/b/a of AICI.

1

319283373v1

(collecting cases) (finding "no private right of action under the NSA to enforce IDR awards."); *see also Worldwide Aircraft Servs., Inc. d/b/a Jet ICU v. Worldwide Ins. Servs., LLC d/b/a GeoBlue*, Case No. 8:25-cv-167-MSS-NHA, ECF No. 22 (M.D. Fla. Aug. 12, 2025) (hereinafter "*Jet ICU v. GeoBlue*").  Finally, even if Jet ICU could privately enforce an IDR determination, the IDR determination at issue was not awarded against AICI, and therefore AICI is not a proper respondent or defendant for the Petition.

For these reasons, the Court should dismiss the Petition with prejudice.[2]

## II.    Background

### A.    Surprise Medical Bills and the NSA

Before 2022, out-of-network health care providers widely engaged in "balance billing" by billing patients the difference between what the provider arbitrarily charges for the service and what the patient's health plan covers.  *See* H.R. Rep. No. 116-615, at 51.  Patients often have "little or no control over whether a provider is in- or out-of-network," especially "in emergency settings." *Id.*  In such cases, patients receive "surprise medical bills . . . subject to higher-than-expected out-of-pocket costs" and  "staggering" financial liability. *Id.* at 51-52.

---

2. AICI respectfully requests that this Court extend the time to respond to the Petition until after the determination of this Motion and of the Court's jurisdiction.

Effective January 1, 2022, Congress enacted the NSA "to protect consumers from surprise medical bills," *Id.* at 47.  The NSA protects consumers by (1) banning surprise medical bills and (2) removing consumers from surprise billing disputes by creating a separate non-judicial process for health plans and providers to resolve them.

### 1.    The NSA Bans Surprise Medical Bills and Limits Patients' Financial Responsibility

The NSA prohibits emergency providers and air ambulance providers, among others from balance billing or otherwise holding patients liable for anything beyond the patient's in-network cost sharing (e.g., deductible, copayment, or coinsurance).  *See* 42 U.S.C. §§ 300gg-131, 300gg-132, 300gg-135.

### 2.    The NSA Removes Patients from Surprise Billing Disputes by Creating a Non-Judicial Process for Health Plans and Providers to Resolve Them

Congress, by enacting the NSA, set up a separate framework—including the IDR process—for resolving disputes over surprise medical bills between providers and health plans without any involvement from the patient.  *See* 42 U.S.C. §§ 300gg-111(c), 300gg-112(c); *see also* H.R. Rep. No. 116-615, at 56–58.  The NSA dispute resolution framework includes open negotiations, an IDR process, agency enforcement, and limited judicial review.

3

### (a)      Open Negotiations and the IDR Process

Surprise billing providers who are dissatisfied with the payment they receive from a health plan may initiate open negotiations with the plan and attempt to negotiate an agreed-upon payment rate for the services.  *See* 42 U.S.C. §§ 300gg-111(c)(1), 300gg-112(b)(1).  If open negotiations fail, then the provider (or plan) may initiate the IDR process, and the initiating party must provide notice of IDR initiation to non-initiating party.   42 U.S.C. §§ 300gg-111(c)(2), 300gg-112(b)(2).  Per the IDR process, the parties select, or the Department of Health and Human Services ("HHS") appoints, a certified IDR entity (the "IDRE") to determine whether the dispute is eligible and to make a payment determination. *See* 42 U.S.C. §§ 300gg-111(c)(4)(F), 300gg-112(b)(4); 45 C.F.R. § 149.510(c)(1)(v).

The IDR process resembles "baseball-style" arbitration where the provider and health plan each submit an offer, and the IDRE selects one party's offer as the out-of-network rate. 42 U.S.C. §§ 300gg-111(c)(5)(A), 300gg-112(b)(5)(A).   The IDRE's payment determination is "binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim."    42 U.S.C. § 300gg-111(c)(5)(E)(i)(I); *see also* 42 U.S.C. § 300gg-112(b)(5)(D).  The NSA states that payment "with respect to a qualified IDR item or service . . . shall be made directly to the nonparticipating provider or facility not later than 30 days after the date" of

4

the IDR determination. 42 U.S.C. § 300gg-111(c)(6); *see also* 42 U.S.C. § 300gg-112(b)(6).

### (b) Agency Enforcement

Congress vested HHS, the Department of Labor ("DOL"), and the Department of Treasury (collectively, the "Agencies") with enforcement authority over the IDR process. Congress specified that the Agencies may enforce health plan and provider non-compliance with the NSA, including by imposing civil monetary penalties. 42 U.S.C. § 300gg-22(b)(2); 42 U.S.C. § 300gg-134 (providing for HHS enforcement); 29 U.S.C. § 1132(a)(5) (providing for DOL enforcement); 26 U.S.C. §§ 9834, 4980D (providing for Treasury enforcement).

HHS also has an online portal through which providers may submit complaints and perform complaint-based audits to enforce the NSA's provisions.[3] If a health plan or payor fails to timely issue payment following an IDR determination, the agency "would require the issuer to pay the provider the determined award amount."[4] Similarly, when DOL receives a complaint, it will

---

[3] *See No Surprises Complaint Form*, CENTERS FOR MEDICARE & MEDICAID SERVICES ("CMS"), available at https://nsa-idr.cms.gov/providercomplaints/s/ (accepting complaints if the provider "ha[s] a complaint about a an entity who [it] believes is not complying with the dispute resolution process related to the final payment determination made by a [IDRE] or the payment of a provider or facility bill under the dispute resolution process.").

[4] United States Gov't Accountability Off., GAO-24-106335, *Report to Congressional Committees: PRIVATE HEALTH INSURANCE Roll Out of Independent Dispute Resolution Process for Out-of-Network Claims Has Been Challenging*, 35 (December 2023) https://www.gao.gov/assets/d24106335.pdf.

contact the health plan to ensure compliance, "which may, for example, result in a payment to a provider that had not been paid according to IDR time frames." *Id.* at 36.

### (c)  Limited Judicial Review

Consistent with providing for agency enforcement, the NSA provides that the IDRE's payment determination "*shall not be subject to judicial review,* except in a case described in any of paragraphs (1) through (4) of section 10(a)" of the FAA. 42 U.S.C. § 300gg-111(c)(5)(E) (emphasis added); *see id.* at § 300gg-112(b)(5)(D). Section 10(a) of the FAA states that a party may file an application to *vacate* an arbitration award in "the United States court in and for the district wherein the award was made" based on certain enumerated circumstances, none of which apply here. 9 U.S.C. § 10(a).  The NSA does not cite any other provision of the FAA, any provision of any state arbitration statute, or otherwise contemplate any other form of private action or judicial review. *See generally* 42 U.S.C. §§ 300gg-111, 300gg-112.

### B.  Jet ICU's Petition Seeks Judicial Review and Confirmation of an IDR Payment Determination

On June 3, 2025, Jet ICU filed a Petition for an Order confirming an IDR determination and for entry of a final judgement pursuant to the FAA § 9 and FAC §§ 682 *et seq.  See* ECF No. 1, ¶ 7–9.

6

Jet ICU attached multiple exhibits to it petition, including an IDR determination for DISP-1061847 (the "IDR Determination") from IDRE Keystone Peer Review Organization, Inc. ("Keystone").  ECF No. 2.  The IDR Determination notes Keystone "did not receive an offer and/or fees from BCBS Federal Program Overseas Claims." *Id.* Nowhere does the IDR Determination reference AICI. *See id.*

### C.   AICI, an Indiana Corporation, Does Not Have Connections to Florida, and Is Not a Proper Defendant for Claims Against "BCBS Federal Program Overseas Claims"

AICI an Indiana corporation with its principal place of business located in Indianapolis, Indiana.  *See* accompanying Declaration of Beth Keyser ("Keyser Dec."), ¶ 3.  AICI is not incorporated or organized under the laws of the State of Florida.  *Id.*, ¶ 4. AICI does not conduct any business in Florida.  *Id.*, ¶ 5.  AICI is not aware of ever paying Florida taxes, nor does it maintain an office in Florida.  *Id.*, ¶¶ 6–7.  AICI does not have a Florida telephone number or mailing address, aside from its current registered agent.  *Id.*, ¶ 8.  AICI does not own or lease any real property in Florida.  *Id.*, ¶ 9.  AICI does not fund, administer, or underwrite any claims for benefits in Florida.  *Id.*, ¶ 10.  AICI does not direct any advertising into Florida. *Id.*, ¶ 11.  AICI does not solicit either individuals or groups from Florida to purchase health insurance or provide administrative services.  *Id.*, ¶ 12.  The party identified in the IDR award sought to be confirmed by the Petition "BCBS Federal Program Overseas Claims" is not a trade name or d/b/a of AICI.

7

*Id.*, ¶ 13.  AICI is not a proper respondent or defendant for claims against "BCBS Federal Program Overseas Claims."  *Id.*, ¶ 14.  AICI did not participate in the IDR process resulting in the IDR Determination. *Id.*, ¶ 15; *see also* ECF No. 2.  AICI does not administer the health benefits plan for the member who allegedly received the services at issue in the Petition. Keyser Dec., ¶ 17.

## III.    Standard of Review

### A.    Rule 12(b)(2)

A party may move to dismiss an action due to lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2).  A plaintiff who brings an action against a nonresident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  *See Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 734 (11th Cir. 2018) (internal quotations omitted).  The Court should dismiss the action if the plaintiff fails to plead sufficient facts showing there is personal jurisdiction over the defendant.  *See, e.g.*, *Shaunnessey v. Monteris Med., Inc.*, 554 F. Supp. 2d 1321, 1331 (M.D. Fla. 2008).  In addition, when a defendant presents evidence showing there is no jurisdiction, the plaintiff must "produce evidence supporting jurisdiction unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction."  *Romero v. Four Seasons Hotels Ltd.*, No. 2:24-cv-819-JLB-KCD, 2025 WL1124995, at *2 (M.D. Fla. Apr. 16, 2025) (citation omitted).

8

**B.      Rule 12(b)(6)**

A party may also seek dismissal due to a plaintiff's failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face."  *Garrett-Alfred v. Facebook, Inc.*, 540 F. Supp. 3d 1129, 1137 (M.D. Fla. 2021) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A complaint that merely alleges a possible or "conceivable" claim for relief is insufficient. *Iqbal,* 556 U.S. at 680 (internal quotations omitted).  Instead, a plaintiff must allege sufficient factual matter that *shows* it is entitled to relief. *Id.* at 679.

**IV.    Argument**

**A.      The Court Lacks Personal Jurisdiction over AICI**

To establish personal jurisdiction, Jet ICU must plead facts showing jurisdiction is appropriate pursuant to (1) Florida's long-arm statute and (2) the Due Process Clause of the Fourteenth Amendment to the Constitution.  *See Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015).  Florida's long-arm statute permits courts to exercise personal jurisdiction over a defendant if the court has general jurisdiction pursuant to Florida Statutes Section 48.193(2) or specific jurisdiction pursuant to Section 48.193(1). *See id.*, at 1204.  Similarly, the Due Process Clause of the Fourteenth Amendment applies the concepts of general and specific jurisdiction.  *See id.*

Here, Jet ICU fails to establish either basis for personal jurisdiction over AICI. The Petition is facially deficient and fails to allege any grounds for the Court to exercise personal jurisdiction over AICI. Moreover, AICI's evidence conclusively establishes that AICI is not subject to personal jurisdiction.

### 1. Jet ICU Cannot Establish That the Court Has General Jurisdiction over AICI

Jet ICU has not shown and cannot show that the Court has general jurisdiction over AICI. For general jurisdiction, Florida's long-arm statute "extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Carmouche,* 789 F.3d at 1204 (cleaned up); *see* Fla. Stat. § 48.193(2). Under the Constitution, general jurisdiction arises if the defendant's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Carmouche,* 789 F.3d at 1204. "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Id.*

"[T]he paradigm bases for general jurisdiction over a corporation are (1) its place of incorporation and (2) its principal place of business." *MSP Recovery Claims Series, LLC v. Nationwide Mut. Ins. Co.*, Civil Action No. 20-21573-Civ-Scola, 2021 WL 355133 at *3 (S.D. Fla. Feb. 2, 2021) ((citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "It is only under 'exceptional' circumstances that a court can exercise general personal jurisdiction over a corporation elsewhere." *Id.; see also Carmouche,*

10

789 F.3d at 1204 ("[A] corporation's operations in a forum other than its formal place of incorporation or principal place of business will be so substantial and of such a nature as to render the corporation at home in that State only in 'exceptional' cases.").

Here, AICI is not incorporated, headquartered, or otherwise "essentially at home" in Florida.  AICI is an Indiana corporation with its headquarters in Indianapolis, Indiana.  Keyser Dec., ¶ 3; *see also* ECF No. 1 at ¶ 2.  Moreover, AICI does not conduct any business in Florida.  *See* Keyser Dec., ¶ 5.  And this is not the first time Jet ICU has improperly sought to pursue claims against AICI in Florida. *See Worldwide Aircraft Servs., Inc. v. Anthem Ins. Co.*, 8:21-cv-456-CEH-AAS, 2023 WL 1069811 at *3 (M.D. Fla. Jan. 27, 2023). There, the same Plaintiffs represented by the same counsel as in this case sued AICI in the Middle District of Florida under ERISA.  The court found venue—the Middle District of Florida—was not appropriate under ERISA's venue provision.  *Id.*  Although the analysis of venue under ERISA's venue provision is slightly different from personal jurisdiction under Rule 12(b)(2), Jet ICU was fully aware that AICI is not subject to personal jurisdiction in Florida prior to commencing this action.

Importantly,  Jet ICU does not allege any facts, and cannot produce any evidence, demonstrating that AICI's "affiliations with [Florida] are so continuous and systematic as to render them essentially at home in the forum State." *See, e.g.*,

11

*Carmouche,* 789 F.3d at 1204.  Accordingly, Jet ICU cannot establish that the Court has general jurisdiction over AICI.

### 2. Jet ICU Fails to Plead this Court has Specific Personal Jurisdiction over AICI

Under Florida's long-arm statute and the Due Process Clause of the Fourteenth Amendment, a defendant is subject to specific jurisdiction if the claim arises out of or relates to the defendant's contacts with Florida.  *See* Fla. Stat. § 48.193(1); *see also Carmouche,* 789 F.3d at 1203–04.  To show specific jurisdiction, Jet ICU must demonstrate a "strong relationship among the defendant, the forum, and the litigation." *Jekyll Island-State Park Auth. v. PolyGroup Macau Ltd.*, 140 F.4th 1304, 1326 (11th Cir. 2010) (cleaned up).  "[I]t is the defendant's conduct"—not the plaintiff's or a third party's—"that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore,* 571 U.S. 277, 285 (2014).

Here, AICI's only suit-related conduct is being improperly named by Jet ICU as a respondent to the Petition; AICI has no connection with Florida, nor with the underlying IDR Determination.  *See id.; see also* Keyser Dec., ¶¶ 3–15.  The IDR Determination plainly identifies BCBS Federal Program Overseas Claims as the non-initiating party subject to the determination.  ECF No. 1-2.  BCBS Federal Program Overseas Claims is not a tradename or d/b/a of AICI. Keyser Dec., ¶ 13. Similarly, Anthem Blue Cross and Blue Shield of Virginia is not a tradename or

12

d/b/a of AICI. *Id.*, ¶ 16. And AICI does not administer the health benefits plan for the member who allegedly received the services at issue in the Petition. *Id.*, ¶ 17. AICI did not participate in the IDR process resulting in the IDR Determination. Therefore, Plaintiff cannot establish that AICI's conduct forms the necessary connection with Florida. *See Walden*, 571 U.S. at 285. Accordingly, this Court lacks specific jurisdiction over AICI.

### 3. The FAA and FAC Do Not Provide a Basis for Exercising Personal Jurisdiction Over AICI

Importantly, Jet ICU's invocation of the FAA and FAC cannot establish personal jurisdiction over AICI. Neither the FAA nor the FAC provide standalone grounds for personal jurisdiction over AICI. *See Worth Grp., Inc. v. Morales*, No. 22-cv-81372-CANNON-MCCABE, 2022 WL 18663051, at *2 (S.D. Fla. Dec. 2, 2022) ("[T]he FAA does not authorize nationwide service of process or personal jurisdiction. To determine personal jurisdiction, therefore, this Court must look to Florida's long-arm statute."); *cf. Tribeca Asset Mgmt. v. Ancla Int'l*, 336 So. 3d 246, 249 (Fla. 2022) (reversing grant of personal jurisdiction based upon the FAC where the Agreement did not provide for arbitration in Florida). There is no general or specific jurisdiction over AICI, and Jet ICU cannot use the FAA or the FAC to circumvent Florida's long-arm statute or the U.S. Constitution.

Moreover, the text of the FAA and the FAC do not support venue or jurisdiction in this Court as they require a written agreement to arbitrate. 9 U.S.C.

13

§ 9; Fla. Stat. § 682.181.  Here, the parties have no written agreement, much less a written agreement to arbitrate DISP-1061847 or the resulting IDR Determination in Florida.  *See Med-Trans Corp. v. Capital Health Plan, Inc.*, 700 F. Supp. 3d 1076, 1083-84 (M.D. Fla. 2023) (holding that "arbitration, at least under the FAA [and FAC], assumes an 'agreement' or 'contract' to arbitrate.  The NSA's IDR, on the other hand, is statutorily compelled" and applies where there is no agreement to arbitrate) (citations omitted).  Further, Jet ICU also has not and cannot show that the IDR Determination was "made" in Florida because the IDRE that made the relevant payment determination is not located in Florida.[5]  In sum, neither 9 U.S.C. § 9 nor Fla. Stat. § 682.181 authorize jurisdiction or venue in this Court.

## B.    Jet ICU Fails to Allege Facts Plausibly Stating a Claim

Even if Jet ICU could establish this Court has personal jurisdiction over AICI, the Petition nevertheless fails to state a claim for relief against AICI.  Jet ICU's petition wrongly assumes that it may confirm NSA IDR determinations pursuant to FAA Section 9 and/or the FAC. *See* ECF No. 1, ¶¶ 6–9.  But Jet ICU is wrong.  The Petition must be denied because IDR determinations cannot be confirmed or converted to judgments under the FAA, the FAC, or any other state

---

8. The Certified Netural that issued the IDR Determination, Keystone Peer Review Organization, LLC f/k/a Keystone Peer Review Organization, Inc., is organized under the laws of Pennsylvania and maintains a principal place of business in McLean, Virginia. *See* Pennsylvania Dep't of State Bus. Search, *Business Search*, https://file.dos.pa.gov/search/business (enter "Keystone Peer Review Organization, Inc." in search bar) (last visited Sept. 9, 2025).

14

arbitration statute.  *See, e.g., Guardian Flight, LLC.*, 140 F.4th at 275 ; *Jet ICU v. GeoBlue* ; *ECAPS*, 2025 WL 2371537 at \*17 .  Notably, in *Jet ICU v. GeoBlue*, an action virtually identical to this one, the Court ruled that there is no private right to enforce IDR determinations and that the Court lacks subject matter jurisdiction because the NSA bars judicial review.  Because  Jet ICU had a full opportunity to argue its right to enforce an IDR award in *Jet ICU v. GeoBlue,* and the Court ruled against it, Jet ICU is collaterally estopped from making the same arguments here.

### 1.      The Fifth Circuit's Opinion in *Guardian Flight* is Persuasive and Should be Followed Here

*Gardian Flight* is highly persuasive as the only federal appellate court to have ruled on the issue of whether out-of-network providers can sue to confirm and enforce IDR determinations under the NSA.  The Fifth Circuit clearly explained that judicial review of IDR determinations under the NSA is barred, except in limited instances of review for vacatur.  *See Guardian Flight*, 140 F.4th at 275. Moreover, Congress could have incorporated by reference into the NSA the FAA provision Section 9 empowering courts to confirm or enforce arbitration awards, but it chose not to.  *See id.* at 276 (noting that Congress only incorporated § 10(a), which is limited to instances of vacatur).   Congress has in other instances incorporated FAA Section 9 in federal statutes, thus indicating the choice to omit it from the NSA was deliberate. *Id*. at 276–77.  "Instead, Congress took a different tack: it empowered HHS to assess penalties against insurers for failure to comply

with the NSA." *Id.* at 277.  And, the "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."  *Id.* (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)).

The Fifth Circuit's holding in *Guardian Flight* that the "NSA's structure conveys Congress's policy choice to enforce the statute through administrative penalties, not a private right of action," *see id.*, is well supported and has been followed by many other courts, including this one.  *See, e.g., Jet ICU v. GeoBlue; ECAPS,* 2025 WL 2371537 at *17 (collecting cases). AICI respectfully requests this precedent be followed here.

### 2.     Collateral Estoppel Bars Jet ICU from Relitigating the Same Issue Previously Litigated in the *Jet ICU v. GeoBlue* Case

Jet ICU is collaterally estopped from relitigating the issue of whether this Court has subject matter jurisdiction to confirm an IDR determination which was fully litigated in the *Jet ICU v. GeoBlue* case.  Collateral estoppel prohibits a party from relitigating an issue that has already been litigated and resolved in a prior proceeding.  *See Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000).

> To claim the benefit of collateral estoppel the party relying on the doctrine must show that: (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been "a critical and necessary part" of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

16

*Id.* (citations omitted).  Importantly, "jurisdictional determinations are entitled to preclusive effect under the collateral estoppel doctrine." *Irvin v. United States*, 335 Fed.Appx. 821, 824 (11th Cir. 2009); *see also North Ga. Elec. Membership Corp. v. Calhoun*, 989 F.2d 429, 433 (11th Cir. 1993).

In *Irvin,* a case strikingly similar to this case, the plaintiff filed his initial complaint challenging a Veterans Administration Medical Center ("VAMC") decision to limit reimbursement of plaintiff's treatment with a morphine pump only to taper and remove the pump. 335 F. App'x at 822. The VAMC decision was subject to the Veterans' Judicial Review Act ("VJRA"), which bars judicial review of a benefits decision by the Veterans Affairs. *Id.; see* 38 U.S.C. § 511(a).  The district court in the initial case dismissed the case without prejudice for lack of subject matter jurisdiction due to the VJRA's bar on judicial review.  *See Irvin*, 335 Fed. Appx. at 822.

Thereafter, the plaintiff in *Irvin* filed a second lawsuit challenging the VAMC decision.  *Id.*  The district court dismissed the second lawsuit based on collateral estoppel as the jurisdictional issue had been decided against plaintiff in the first lawsuit.  *Id.*  On appeal, the Eleventh Circuit affirmed the dismissal of the second lawsuit based on collateral estoppel finding all four elements of collateral estoppel were present. *Id*. at 822–25.

17

The case at hand is nearly identical to *Irvin*, in that this Court has already found it lacks subject matter jurisdiction to confirm IDR determinations because of a bar on judicial review. *See id.* at 822; *c.f. Jet ICU v. GeoBlue*, at 6. Moreover, all elements of collateral estoppel are satisfied. First, the issue at stake—whether this Court has subject matter jurisdiction to confirm IDR determinations when the NSA bars judicial review— is identical to the one involved in *Jet ICU v. GeoBlue*. *Id*. at 5-6. Second, the issue was actually litigated in *Jet ICU v. GeoBlue*. *See generally id.* When ruling in *Jet ICU v. GeoBlue*, the Court "heard and decided that it did not have subject matter jurisdiction to review the" IDR determination. *See Irvin*, 335 Fed.Appx. at 824. Third, the issue of subject matter jurisdiction to confirm the IDR determination was "critical and necessary" to the resolution of that suit. Deciding the issue of subject matter jurisdiction meant the Court "was without jurisdiction and unable to proceed on to the merits of the suit." *Irvin*, 335 Fed.Appx. at 824. Fourth, Jet ICU had a full and fair opportunity to litigate the issue in *Jet ICU v. GeoBlue*. As such, Jet ICU is collaterally estopped from arguing that it has a private right of action under the NSA to confirm an IDR determination.

### 3.    Jet ICU Lacks a Right to Confirm IDR Awards

#### (a)    Jet ICU Cannot Meet the Requirements for Confirmation under FAA Section 9 or the FAC

Even if it were not collaterally estopped, Jet ICU would not be entitled to confirmation of the IDR Determination. The FAA and FAC provide for the

18

enforcement of written arbitration agreements, and under the NSA there are no written arbitration agreements.  Section 9 of the FAA describes procedures for confirming arbitration awards according to what "is specified *in the agreement* of the parties." 9 U.S.C. § 9 (emphasis added).  Similarly, the FAC "governs" when there is "*an agreement to arbitrate*." Fla. Stat. § 682.013(1), (2) (emphasis added).  The NSA's IDR process applies exclusively where there is *no* agreement between the parties. *See* 42 U.S.C. §§ 300gg-111(a)(3)(G), 300gg-112(a); *Med-Trans Corp.*, 700 F.Supp.3d at 1083–84. Thus, Jet ICU cannot "confirm" an IDR determination pursuant to the FAA or the FAC. *See Med-Trans Corp. v. Capital Health Plan, Inc.*, 700 F.Supp.3d 1076, 1083–84 (M.D. Fla. 2023), *appeal dismissed*, 2024 WL 3402119 (11th Cir. 2024); *Ellis, Rohas, Ross & Debs, Inc. v. UMR, Inc.*, No. 24-cv-20428-GAYLES, 2025 WL 742761, at *3 n. 1 (S.D. Fla. Mar. 9, 2025); *Guardian Flight, L.L.C.*, 140 F.4th at 275.

> **(b)     The NSA Does Not Grant Jet ICU a Private Right or Remedy to Enforce IDR Determinations in Court**

The NSA does not provide a private cause of action for plaintiffs to sue in federal court to enforce IDR determinations or have them be converted to federal judgments.  To do so, Jet ICU must demonstrate that the NSA "displays an intent to create not just a private right but also a private remedy" to confirm IDR determinations pursuant to the FAA or FAC.  *See Alexander v. Sandoval*, 532 U.S.

275, 286 (2001); *see Gonzaga Univ. v. Doe,* 536 U.S. 273, 290 (2002) . Crucially, "the text of a law controls over purported legislative intentions unmoored from any statutory text," and courts "may not 'replace the actual text with speculation as to Congress' intent.'" *Corner Post, Inc. v. Board of Governors of the Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2454 (2024) (citation omitted).

Jet ICU does not come close to meeting this high bar. Far from containing "clear and unambiguous terms" demonstrating an intent to grant Jet ICU a private right and remedy to confirm IDR determinations via the FAA or FAC, *see Gonzaga Univ.*, 536 U.S. at 290, "the NSA's text and structure point in the opposite direction," *Guardian Flight*, 140 F.4th at 275. The NSA does not reference or invoke Section 9 of the FAA, the FAC, or any other state arbitration act. Congress chose to omit 9 U.S.C. Section 9 from the NSA, despite including it in other similar statutory contexts. The NSA prohibits judicial review except for actions to vacate an IDR determination per Section 10(a) of the FAA, and Congress granted the Agencies the authority to enforce a payor's non-payment of an IDR determination.

### (c)    The NSA Does Not Reference or Incorporate Section 9 of the FAA

Importantly, "Congress chose not to incorporate § 9 into the NSA." *Guardian Flight*, 140 F.4th at 276. Indeed, the NSA does not "incorporate . . . or even discuss judicial confirmation of an IDR award." *Ellis, Rohas, Ross & Debs*, 2025 WL 742761, at *3; *Med-Trans Corp.,* 700 F. Supp. 3d at 1083. A "fundamental principle

20

of statutory interpretation [is] that absent provision[s] cannot be supplied by the courts." *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) (cleaned up).  Because Congress did not reference or invoke Section 9 of the FAA in the NSA, JET ICU cannot seek relief under it. *See Guardian Flight,* 140 F.4th at 276-77.

> **(d)      Congress Chose to Omit 9 U.S.C. Section 9 from the NSA, Despite Including the Provision in Other Similar Statutory Contexts**

Additionally, federal statutes in other similar contexts that reference Section 9 of the FAA indicate that Congress's omission of Section 9 from the NSA was intentional. *See Guardian Flight,* 140 F.4th at 276-77 (quoting *Turtle Island Restoration Network v. Evans*, 284 F.3d 1282, 1296 (Fed. Cir. 2002) ("When Congress omits from a statute a provision found in similar statutes, the omission is typically thought deliberate.")).  For example, Congress expressly incorporated Section 9 of the FAA in the Administrative Dispute Resolution Act to grant parties a private right of action to confirm a dispute resolution award.  5 U.S.C. § 580(c) ("A final award is binding on the parties to the arbitration proceeding, and *may be enforced pursuant to sections 9 through 13* of [the FAA].") (emphasis added).  "Obviously, then, when Congress wished to" authorize confirmation via 9 U.S.C. Section 9, "it knew how to do so and did so expressly." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979).

21

As explained by the Fifth Circuit, Congress's choice to omit FAA Section 9 from the NSA's text, despite including it in other similar legislation, shows that Congress did not intend to permit confirmation via that provision (or any private enforcement of IDR determinations). *Guardian Flight*, 140 F.4th at 276; *see, e.g.*, *Azar v. Allina Health Servs.*, 587 U.S. 566, 576-77 (2019).

As noted, reading Section 9 of the FAA into the NSA violates fundamental principles of statutory interpretation that "absent provisions cannot be supplied by the courts" especially where "Congress has shown that it knows how to adopt the omitted language provision." *Rotkiske v. Klemm*, 589 U.S. 8, 14–15 (2019).

### (e)   The NSA Prohibits Judicial Review Except for Actions to Vacate IDR Determinations per Section 10(a) of the FAA

Critically, instead of invoking 9 U.S.C. Section 9 in the NSA—as Congress did in other similar statutory contexts—Congress expressly prohibited "judicial review" of the IDR determinations except as provided under the vacatur provisions in Section 10(a) of the FAA. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II); *Guardian Flight*, 140 F.4th at 275 ("The only right of action provided derives from the incorporated *vacatur* sections of Section 10(a) of the FAA—none of which applies to this dispute, as Providers concede.") (emphasis added); *Ellis, Rohas, Ross & Debs*, 2025 WL 742761, at *3.

22

Congress often uses the term "judicial review" to include "actions that seek to confirm or enforce a dispute resolution award." *Guardian Flight,* 140 F.4th at 276. Therefore, the NSA's "bar on judicial review strongly suggests Congress did not insert a private right of action into the statute." *Id.*, at 275.

### (f)   Congress Granted the Agencies the Authority to Enforce a Payor's Failure to Pay an IDR Determination

The structure of the NSA shows that Congress did not intend for Jet ICU to privately confirm and enforce IDR determinations via 9 U.S.C. Section 9 or the FAC. "Instead, Congress took a different tack: it empowered HHS [and the other Agencies] to assess penalties against insurers for failure to comply with the NSA." *Guardian Flight*, 140 F.4th at 277; *see* 42 U.S.C. §§ 300gg-22(b)(2); 300gg-134; 29 U.S.C. § 1132(a)(5) ; 26 U.S.C. §§ 9834, 4980D.  The Agencies have "acted on that authority by soliciting provider complaints and compelling payors to pay IDR awards where appropriate." *Guardian Flight,* 140 F.4th at 277 (citation omitted).

Congress's decision to employ an agency enforcement scheme "conveys Congress's policy choice to enforce the statute through administrative penalties, not a private right of action." *Id.*; *see also Alexander v. Sandoval*, 532 U.S. 275, 290 (2001) . Congress "had good reasons to provide only a general administrative remedy, together with a strictly limited form of judicial review." *Guardian Flight*, 140 F.4th at 277. In the first calendar year the NSA was in effect, "providers filed

23

more than *thirty times* the number of IDR disputes HHS anticipated." *Id.* By 2024, providers had initiated 1,463,872 disputes through the Federal IDR portal.[6] Plainly, "Congress may have judged it better to have an administrative enforcement mechanism handle most award disputes instead of throwing open the floodgates of litigation." *Guardian Flight*, 140 F.4th at 277. Although providers may prefer a private enforcement mechanism, "the wisdom of Congress's policy choice is beyond [the Court's] judicial ken." *Id.* By delegating to the Agencies the authority to enforce a plan's failure to pay an IDR determination within 30 days, Congress showed that it did not intend to create a private enforcement scheme through FAA Section 9, the FAC, or otherwise.

### 4. The IDR Determination at Issue is Not Enforceable Against AICI

Even if Jet ICU was entitled to confirmation or enforcement of IDR determinations in court, which it is not, the IDR Determination here identifies "BCBS Federal Program Overseas Claims"— not AICI—as the party responsible for paying the IDR Determination. ECF No. 2.

An IDR determination is only "binding upon the *parties involved* . . ." 42 U.S.C. §§ 300gg-111(c)(5)(E)(i)(II) (emphasis added); *see also* 300gg-112(b)(5)(D).

---

[6] *See* Centers for Medicare and Medicaid Servs., *Supplemental Background on Federal Independent Dispute Resolution Public Use Files July 1, 2024 – December 31, 2024,* https://www.cms.gov/files/document/federal-idr-supplemental-background-2024-q3-2024-q4.pdf.

However, AICI was not involved in the IDR process. *See* Keyser Dec., ¶ 15. The IDR Determination makes clear BCBS Federal Program Overseas Claims was the "non-initiating party." ECF No. 2. However, AICI is not a proper defendant or respondent for claims against BCBS Federal Program Overseas Claims. *See* Keyser Dec., ¶ 14. AICI did not administer the health plan that gave rise to the IDR Determination. *See id.*, ¶ 16. Thus, even if Jet ICU had a private right of action to enforce the IDR Determination—which as discussed above, it does not—doing so against AICI would be patently improper.

## V.   Conclusion

For the forgoing reasons, AICI respectfully requests this Court dismiss the Petition with prejudice and award such further relief as the Court deems just and proper.

Date: September 8, 2025                    Respectfully Submitted,


                                           By: /s/ *Noah J. DiPasquale*
                                           Noah J. DiPasquale
                                           Florida Bar No. 1003238
                                           TROUTMAN PEPPER LOCKE LLP
                                           noah.dipasquale@troutman.com
                                           1001 Haxall Point, Suite 1500
                                           Richmond, VA 23219
                                           Telephone: 804-697-1266
                                           *Attorney for Defendant Anthem*
                                           *Insurance Companies, Inc.*

## Local Rule 3.01(g) Certification

Counsel for movant Anthem Insurance Companies, Inc. ("AICI") certifies that counsel for AICI met and conferred with counsel for Plaintiff and the parties were unable to agree on resolution of the matters set forth in this Motion. The conference took place by both telephone and email correspondence.